EL PUEBLO DE PUERTO RICO, demandante y recurrente, *v.* SERGIO E. RODRÍGUEZ, acusado y recurrido.

*Número:* CE-64-20    *Resuelto:* 3 de febrero de 1965

J. B. Fernández Badillo, Procurador General, y J. F. Rodríguez
Rivera, Procurador General Auxiliar, abogados de El Pueblo;
Herminio Concepción de Gracia, e Ismael Betancourt Lebrón,
abogados del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como
Presidente de Sala y los Jueces Asociados Señores Rigau y
Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del
Tribunal.

El Fiscal acusó a Sergio E. Rodríguez ante el Tribunal
de Distrito de una infracción a la ley que prohibe la práctica
ilegal de la medicina, cometida de la manera siguiente:

" . . . allá para el 20 de marzo de 1962 y en San Juan, . . .
ilegal, voluntaria, maliciosa y criminalmente, sin poseer una
licencia expedida por el Tribunal Examinador de Médicos de
Puerto Rico para ejercer la medicina en Puerto Rico, se hizo
pasar por médico y en tal capacidad examinó a Lucía Fernández
y a Ignacio Murga y firmó como médico cirujano en el ejercicio
legal de su profesión en Puerto Rico una certificación médica
para que dichos Lucía Fernández e Ignacio Murga pudiesen
contraer matrimonio y que recibió remuneración por tales servi-
cios."

Comenzó a ser juzgado y una vez desfilada la prueba de
cargo presentó una moción de archivo y sobreseimiento fun-
dada en que los hechos alegados y probados no constituían
delito público. El tribunal concedió término a las partes para
la radicación de memoranda y una vez recibidos los mismos,
dictó resolución declarando sin lugar la moción de archivo
y sobreseimiento. El Tribunal Superior expidió un auto de
certiorari para revisar esa resolución y luego de sometido el
recurso para su resolución dictó sentencia revocándola y
ordenando la absolución del acusado. Para revisar esa sen-
tencia expedimos un auto de certiorari.

724

La prueba irrefutada de cargo presentada ante el Tribunal de Districto demostró (1) que el Tribunal Examinador de Médicos de Puerto Rico nunca le ha expedido licencia para ejercer la medicina y cirugía en Puerto Rico al acusado Dr. Sergio E. Rodríguez; (2) que dicho acusado posee la licencia #84 que lo autorizaba a ejercer como Quiropráctico en Puerto Rico, y (3) que en marzo 20 de 1962, el acusado expidió una "Certificación Médica para Contraer Matrimonio" en la cual certificaba, bajo su firma como "Medico Cirujano en el ejercicio legal de su profesión en Puerto Rico" que en esa fecha había examinado a Lucía Fernández y a Ignacio Murga y que ninguno de ellos sufría de locura, epilepsia, idiotez, sífilis o de enfermedad venérea alguna que les impidiera contraer matrimonio dentro de los próximos diez días de expedido el certificado. (¹)

---

(¹) A continuación se copia textualmente la referida certificación:

"CERTIFICACIONES REQUERIDAS PARA LA OBTENCION DE UNA LICENCIA MATRIMONIAL

Certificación Médica para Contraer Matrimonio

(Esta Certificación no es Válida Pasados 10 Días de la Fecha de su Expedición)

(A)

Certifico que en esta fecha he examinado a LUCIA FERNANDEZ y que no sufre de locura, epilepsia, idiotez, sífilis, o de enfermedad venérea alguna que le impida contraer matrimonio, dentro de los próximos diez días a partir de esta fecha y de acuerdo con las disposiciones de las leyes actualmente vigentes al efecto en Puerto Rico.

Nombre  S. E. RODRIGUEZ
Fecha  MAR. 20-1962
Firma  Dr. Sergio E. Rodríguez
(Médico-Cirujano en el ejercicio legal de su profesión en Puerto Rico)

(B)

Certifico que en esta fecha he examinado a  IGNACIO MURGA y que no sufre de locura, epilepsia, idiotez, sífilis, o de enfermedad venérea alguna que le impida contraer matrimonio, dentro de los próximos diez días a partir de esta fecha y de acuerdo con las disposiciones de las leyes actualmente vigentes al efecto en Puerto Rico.

Nombre  S. E. RODRIGUEZ
Fecha  MAR. 20-1962
Firma  Dr. Sergio E. Rodríguez
(Médico-Cirujano en el ejercicio legal de su profesión en Puerto Rico)"

La ley regulando el ejercicio de la profesión médica, castiga la práctica ilegal de la medicina en Puerto Rico y define lo que debe entenderse por práctica ilegal de la medicina. La Sec. 39 del Título 20 de las Leyes Anotadas de Puerto Rico, dispone:

"§ 39. Práctica ilegal de la medicina, penalidades

Toda persona que fuere denunciada y convicta de ejercer ilegalmente la medicina o cirugía, la osteopatía, o cualquiera rama de éstas o de sus profesiones auxiliares, o la obstetricia, contraviniendo a las disposiciones de las secs. 31 a 53 de este título, por cada infracción incurrirá en un delito menos grave y será castigada con una multa que no bajará de veinticinco dólares o prisión en la cárcel, o ambas penas a discreción del tribunal; Disponiéndose, que el Tribunal Superior tendrá jurisdicción concurrente sobre estos casos; Disponiéndose, además, que en caso de reincidentes el delito aparejará pena mínima de treinta días de cárcel. Para los efectos de las secs. 31 a 53 de este título se considerará como ejerciendo ilegalmente la medicina y cirugía, la osteopatía o cualquiera de las ramas de estas profesiones, o la obstetricia, o cualquiera de las profesiones auxiliares de la medicina y cirugía, a cada persona que, sin poseer una licencia expedida por el Tribunal Examinador de Médicos de Puerto Rico, se anunciare o se hiciese pasar como médico, cirujano, osteópata, practicante, o comadrona, y que se haga pasar como capacitado para diagnosticar, tratar, operar, o recetar para cualquier enfermedad, dolor, lesión, deformidad, o condición física, o que lleve a cabo, o se ofrezca por cualesquiera medios o método para diagnosticar, tratar, operar, o recetar para cualquier enfermedad, dolor, lesión, deformidad, o condición física, reciba o no remuneración por tales servicios; Disponiéndose, que los estudiantes de medicina debidamente matriculados en escuelas médicas organizadas en Puerto Rico podrán, bajo la supervisión docente de un médico debidamente autorizado para ejercer la medicina en Puerto Rico, llevar a cabo exámenes en seres humanos, recetar, ayudar en operaciones, dar anestesia, atender casos de cirugía menor, y atender casos de parto como parte de sus estudios, mientras asistan a la escuela de medicina; Disponiéndose, además, que constituirá delito menos grave sujeto a las mismas penalidades enumeradas anteriormente: (1) El uso del título de 'doctor en medicina', o cualquiera abreviatura

derivada del mismo, incluyan o no los términos 'quiropodista', 'pediatrista', excepto en los casos de personas que estuvieren legalmente autorizadas para ejercer la medicina en Puerto Rico; (2) El uso de los términos 'especialista pédico', 'cirujano pédico', 'cirujano ortopédico', 'especialista ortopédico', o cualquiera otra derivación de los mismos, excepto en los casos de personas legalmente autorizadas para ejercer la profesión médica en Puerto Rico; (3) El anunciarse como quiropodista o pediatrista, a menos que sea un médico cirujano legalmente autorizado para ejercer la profesión en este Estado Libre Asociado, haciendo saber que el anunciante trata toda clase de enfermedades y dolencias de las condiciones anormales de los pies."

■ Para determinar si el acusado había o no violado la ley que castiga la práctica ilegal de la medicina en Puerto Rico, el Tribunal Superior no concedió importancia al hecho de que al firmar el certificado para contraer matrimonio usó el título de "Médico-Cirujano". Fundó su sentencia en el criterio de que la evidencia ofrecida por el Fiscal "no establece que un quiropráctico, dentro del campo limitado de su profesión no pueda diagnosticar la presencia o ausencia de idiotez, epilepsia o enfermedades venéreas". Convino dicho tribunal sin embargo en que de la evidencia documental se desprende que el acusado no es un médico debidamente autorizado a ejercer su profesión en Puerto Rico, y que al firmar el certificado lo hizo haciéndose pasar por médico cirujano en el ejercicio de su profesión en Puerto Rico y además que diagnosticó la ausencia de ciertas enfermedades en las personas a favor de quienes expidió los certificados.

Esto de por sí solo constituye práctica ilegal de la medicina, y era, por tanto, suficiente para sostener la resolución del Tribunal de Distrito. Examinemos, sin embargo, la cuestión de si era necesario presentar evidencia adicional a la presentada por el fiscal para probar que un quiropráctico no está autorizado para diagnosticar si un ser humano padece o no de locura, epilepsia, idiotez, sífilis o enfermedades venéreas.

■ En el año 1952 nuestra legislatura aprobó la Ley Núm. 493 para regular en Puerto Rico el ejercicio de la

profesión de quiropráctico. (20 L.P.R.A. secs. 151 a 169.) En la Exposición de Motivos de esa ley se hizo claro que el ejercicio de la quiropráctica, según se definía en la propia ley, no es la práctica de la medicina o de la osteopatía dentro de las leyes vigentes. En su Art. 1 define la quiropráctica en estos términos:

"Sec. 151. Definiciones.

Siempre que se utilicen en las secs. 151 a 169 de este título, las siguientes palabras significarán:

(a) 'Quiropráctica' significa la ciencia del tratamiento del cuerpo humano mediante ajustes y manipulaciones encaminadas a corregir desvíos y dislocaciones parciales de la columna vertebral que ejercen presión sobre los nervios, entorpeciendo la transmisión de energía vital del cerebro a los órganos, los tejidos y las células del cuerpo humano.

(b)  .  .  .  ."

Una licencia para ejercer la quiropráctica autoriza a su tenedor a:

"(a) Examinar y analizar el cuerpo humano mediante el uso de métodos físicos, químicos, eléctricos, térmicos o radiónicos, así como mediante el uso de rayos X;

(b) Tratar el cuerpo humano por medios manuales, mecánicos, eléctricos o naturales o mediante el empleo de métodos físicos, o por medio de la fisioterapia (incluyendo luz, calor, agua, y ejercicio), o mediante el uso de alimentos o vitaminas;

(c) Administrar primera ayuda o métodos de higiene." Art. 8, Ley Núm. 493 de 15 de mayo de 1952 (20 L.P.R.A. sec. 158).

Esta facultad de examinar, analizar y tratar el cuerpo humano por los métodos consignados en la ley, así como la facultad de administrar primera ayuda o métodos de higiene, está restringida al campo especial de la quiropráctica según ésta se define en el estatuto y no faculta al quiropráctico para invadir el campo de la medicina y cirugía. La ley en su Art. 10 (20 L.P.R.A. sec. 159) estatuye que una licencia para ejercer la quiropráctica no autoriza a su tenedor a: "(a) Recetar o administrar a una persona, medicina o droga alguna; ni a (b) Practicar cirugía; ni a (c) Practicar la

obstetricia." Sin embargo, ello no significa que el quiropráctico pueda realizar otros actos, fuera del campo de la quiropráctica, que no estén expresamente prohibidos por el citado Art. 10, si esos actos caen dentro del ejercicio de la medicina o cirugía.(²) La ley en su Art. 18 (20 L.P.R.A. sec. 168) faculta a los quiroprácticos para "ejecutar y firmar todo documento legal o certificados, que sean incidentales al ejercicio de la quiropráctica". Ya conocemos la definición legal de la quiropráctica. Por lo tanto, los documentos legales y certificaciones que puede ejecutar y firmar el quiropráctico deben referirse y circunscribirse al examen y análisis del cuerpo humano mediante los métodos señalados en la propia ley o al tratamiento del cuerpo humano mediante ajustes y manipulaciones encaminados a corregir desvíos y dislocaciones parciales de la columna vertebral.

Es obvio que un médico no puede diagnosticar una enfermedad y firmar un certificado sobre su diagnóstico si previamente no ha hecho un examen al paciente usando los métodos que señala la ciencia. Examinados los métodos de examen, análisis y tratamiento del cuerpo humano que la ley permite usar al quiropráctico, es evidente que este profesional no está autorizado a diagnosticar ni firmar certificados sobre enfermedades, tales como locura, epilepsia, idiotez, sífilis o enfermedades venéreas, las que indiscutiblemente están fuera de la práctica de la quiropráctica. Las enfermedades mentales, por ejemplo, sólo pueden ser diagnosticadas y tratadas por los médicos, hoy en día principalmente por los especialistas en esas enfermedades conocidos con el nombre de psiquiatras. Por otro lado, la sifilografía que es parte de la medicina

---

(²) En *People* v. *Fowler*, 84 P.2d 326 y *People* v. *Mangingli*, 218 P.2d 1025; se resuelve que el ejercicio de la quiropráctica no puede salirse de los límites de esa ciencia según la define el estatuto y que la prohibición de que el quiropráctico se dedique a ciertas prácticas no significa que pueda dedicarse a otras no prohibidas expresamente, si éstas caen dentro del ejercicio de la medicina o cirugía. Concurrimos con esa doctrina.

tampoco enmarca en la práctica restringida de la quiropráctica.

■ Establecido pues el hecho, mediante evidencia documental, como ocurrió en este caso, que un quiropráctico no autorizado a ejercer la medicina y cirugía en Puerto Rico, examinó a dos personas, diagnosticó que no sufrían de enfermedades mentales, epilepsia, sífilis o enfermedades venéreas y luego autorizó bajo su firma un documento certificando ese hecho, queda comprobada la práctica ilegal de la medicina por el quiropráctico. Vistas las disposiciones de las leyes que regulan el ejercicio de la medicina y de la quiropráctica en Puerto Rico, el fiscal no venía obligado a probar que un quiropráctico, dentro del campo limitado de su profesión no puede diagnosticar la presencia o ausencia de tales enfermedades en un cuerpo humano. Ello es así porque la propia definición estatutaria de la quiropráctica excluye la facultad de dicho profesional para diagnosticar y expedir certificaciones sobre enfermedades que caen fuera del campo de su práctica.

*En vista de ello se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 5 de junio de 1964, y se devolverá el caso al Tribunal de Distrito para la continuación de los procedimientos.*